UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARLA ERWAY,

               Plaintiff,

v.                                           Case No. 8:14-CV-1803-T-24EAJ

CAROLYN W. COLVIN,
Acting Commissioner of the United
States Social Security Administration,

               Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Upon a review of the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the ALJ's decision, the administrative record, and the pleadings and memoranda submitted by the parties in this case, and for the reasons set forth herein, I recommend that the Commissioner's decision in this case be **AFFIRMED**.

### I.    Background

Plaintiff filed for DIB and SSI on May 21, 2007, alleging that her disability began on March 19, 2007. (T 266, 273, 294) Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and received a hearing, which was held on October 5, 2009 before ALJ Todd S. Colarusso. (T 81-98) In a decision dated November 30, 2009 (the "Colarusso Decision"), ALJ Colarusso found Plaintiff not disabled as defined under the Act. (T 118-25) On May 25, 2011, the

Appeals Council vacated the Colarusso Decision and remanded the case for further proceedings. (T 135-37)  On June 5, 2012, Plaintiff appeared before ALJ Donald G. Smith (the "ALJ") for an additional hearing (the "Hearing"), and on July 16, 2012, the ALJ issued a decision finding Plaintiff not disabled (the "Decision").  (T 23-40, 51-80)  Plaintiff timely exhausted her administrative remedies, and this case is properly before the Court for review under 42 U.S.C. § 405(g).

## II.   The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-point sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy.  See Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four, and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

In his Decision, the ALJ performed the required five-step sequential analysis. (T 23-40)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (T 26)  At step two, the ALJ determined that Plaintiff suffered from the severe impairments of degenerative disc disease, arthritis, panic disorder, and major depressive disorder. (T 26-30)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix 1. (T 30-32)  Next, the ALJ found that Plaintiff retained the residual functional

capacity ("RFC") to perform light work with the following limitations: Plaintiff could lift up to twenty (20) pounds occasionally and up to ten (10) pounds frequently; could sit for up to six (6) hours per day; could stand or walk for up to six (6) hours per day; could frequently reach, push, pull, handle, and finger; could never climb; could occasionally balance, stoop, kneel, crouch, and crawl; must avoid unprotected heights, moving mechanical parts, operating motor vehicles, and vibration; could perform simple, routine, or repetitive tasks and detailed tasks, but not complex tasks; could handle ordinary and routine changes in work setting or duties; could not perform rapid production or rapid quota type work; was limited to frequent interaction with the public, co-workers, and supervisors; and could maintain attention and concentration for two (2) hours and then would need a ten (10) minute break. (T 32)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a waitress or packager/labeler. (T 38-39, 75-76)  At step five, based in part on the testimony of a vocational expert ("VE") at the Hearing, the ALJ determined that Plaintiff was capable of performing the requirements of representative occupations such as a labeling machine operator, merchandise marker, and production inspector. (T 39-40, 77)  Based on his finding at step five, the ALJ concluded that Plaintiff was not disabled under the Act. (T 40)

### III.    Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)(per curiam).  Substantial evidence is "more than a scintilla and is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th

Cir. 2011) (citation omitted).  If the Commissioner's findings of fact are supported by substantial evidence, they shall be conclusive.  42 U.S.C. § 405(g).  Further, when the Commissioner's decision is supported by substantial evidence, the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam).  The district court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner.]"  Id.  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision."  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (noting that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV.    Discussion

Plaintiff challenges the ALJ's Decision on nine grounds:

(1)    The ALJ failed to properly address the issues raised by the Appeals Council;

(2)    The ALJ failed to consider the functional impact of all of Plaintiff's impairments;

(3)    The ALJ failed to properly consider whether Plaintiff met the criteria under Listing 12.04;

(4)    The ALJ failed to properly consider the relevant medical opinions;

(5)    The ALJ utilized improper legal standards;

(6)    The ALJ posed an incomplete hypothetical question to the VE;

(7)    The ALJ failed to properly apply the Eleventh Circuit's pain standard;

(8)    The ALJ failed to properly consider the Plaintiff's GAF scores; and

(9)     The ALJ failed to properly consider the lay testimony on record.

For the reasons discussed below, the Court finds that the ALJ's Decision was based on substantial evidence and comported with applicable legal standards.

## A.     Listing 12.04 (Issue 3)[1]

Plaintiff argues that the ALJ erred by failing to find that she met the criteria under Listing 12.04 for affective disorders.  If a claimant has an impairment that is listed in or equal to an impairment listed in Appendix 1, Subpart P, following 20 C.F.R. § 404.1599, then a finding of disability will be made at step three of the ALJ's analysis without considering the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(d).  "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity . . . ."  Sullivan v. Zebley, 493 U.S. 521, 532 (1990).  A claimant has the burden of proving that her impairments meet or equal a listed impairment and must present specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria.  Id. at 530.  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Id. (emphasis in original).

Listing 12.04 states:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.

---

[1]  For the sake of brevity, the Court addresses Plaintiff's arguments in the order in which they arise within the ALJ's Decision and consolidates related issues as necessary.

Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

A.      Medically documented persistence, either continuous or intermittent, of one of the following:

      1.      Depressive syndrome characterized by at least four of the following:

            a.      Anhedonia or pervasive loss of interest in almost all activities; or

            b.      Appetite disturbance with change in weight; or

            c.      Sleep disturbance; or

            d.      Psychomotor agitation or retardation; or

            e.      Decreased energy; or

            f.      Feelings of guilt or worthlessness; or

            g.      Difficulty concentrating or thinking; or

            h.      Thoughts of suicide; or

            i.      Hallucinations, delusions, or paranoid thinking; or

      2.      Manic syndrome characterized by at least three of the following:

            a.      Hyperactivity; or

            b.      Pressure of speech; or

            c.      Flight of ideas; or

            d.      Inflated self-esteem; or

            e.      Decreased need for sleep; or

            f.      Easy distractibility; or

            g.      Involvement in activities that have a high probability of painful consequences which are not recognized; or

            h.      Hallucinations, delusions or paranoid thinking;

or

      3.      Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B.      Resulting in at least two of the following:

      1.      Marked restriction of activities of daily living; or

      2.      Marked difficulties in maintaining social functioning; or

      3.      Marked difficulties in maintaining concentration, persistence, or pace; or

4.    Repeated episodes of decompensation, each of extended duration;

OR

C.    Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1.    Repeated episodes of decompensation, each of extended duration; or

2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App'x. 1, § 12.04.

In his Decision, the ALJ considered whether Plaintiff met the criteria under Listing 12.04. (T 30-32) First, the ALJ addressed the Paragraph B criteria of Listing 12.04, but found that Plaintiff did not suffer from marked limitations in any of the delineated categories of mental functioning. (T 30-31) Next, the ALJ addressed the Paragraph C criteria of Listing 12.04, but found that the evidence was insufficient to meet its requirements. (T 31) Therefore, the ALJ concluded that Plaintiff did not meet the criteria under Listing 12.04. (T 30-32)

Plaintiff argues that the ALJ should have found that she met the criteria of Listing 12.04 at step three of his Decision. Specifically, Plaintiff contends that she met the criteria of Paragraph A by suffering from appetite disturbance, sleep disturbance, decreased energy, and difficulty concentrating and Paragraph B by suffering from marked difficulties in maintaining social functioning and concentration. In terms of the Paragraph B criteria of Listing 12.04, the ALJ found

7

that Plaintiff suffered from only moderate difficulties in social functioning and maintaining

concentration, persistence, or pace. (T 30-31)  In support of this finding, the ALJ explained:

> In social functioning, the claimant has moderate difficulties. The claimant admits that she spends time with others; she lives with friends; she talks to friends on the phone daily; she visits with friends and neighbors; and she goes out sometimes (Exhibits 6E and 39F). Rarely, if ever, did a source indicate that there were difficulties with demeanor, as the claimant was routinely calm and cooperative on examination. Dr. Hodan noted that the claimant was very pleasant and friendly, and her attitude was cooperative (Exhibit 6F). Directions treatment records routinely noted that the claimant was interactive, pleasant, and cooperative (Exhibits 42F, 43F, and 45F). The weight of the evidence is consistent with a finding that the claimant has a moderate limitation in social functioning.
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant admits that she drives, she shops, she is able to follow instructions, she listens to the radio, and she cares for a pet and others; all of which would require some memory, attention, concentration, persistence, and pace (Exhibits 6E and 39F). No doctor has indicated that the claimant was unable to understand their prescribed treatment regimens for the claimant. The claimant also exhibited an ability to complete many of the disability forms she offered herself, and the aforementioned references to intact activities of daily living invariably call for some degree of concentration. Dr. Hodan indicated that the claimant was alert, clear thinking, not in acute distress, and oriented; she functioned within at least the average range of intelligence; and her cognitive abilities were well retained (Exhibit 6F). Directions treatment records routinely noted that the claimant was grossly intact cognitively (Exhibits 42F, 43F, and 45F). The weight of the evidence is consistent with a finding that the claimant has a moderate limitation in concentration, persistence, or pace.

(T 30-31)

Reviewing the medical record as a whole, it is clear that the ALJ's step three finding is

supported by substantial evidence.  In terms of social functioning, Plaintiff fails to rebut the ALJ's

reasoned analysis demonstrating that her difficulties did not rise to the marked level.  Plaintiff's

treating and examining sources consistently found her to be pleasant, cooperative, friendly, talkative, and coherent. (T 31, 34, 527-28 ("She was very pleasant and friendly today, cooperative in her attitude, suggesting that she is capable of developing and maintaining smooth relationships with others."), 773, 775, 828, 843, 856, 863, 864, 867, 911, 912, 919, 923, 925, 935, 944)  Plaintiff also described performing a number of social activities that are suggestive of mild to moderate, as opposed to marked, limitations in social functioning. (T 30-31, 72-73, 91, 308, 320-22, 348)

In support of her argument, Plaintiff directs the Court to an August 27, 2008 "Brief Psychological Assessment" completed by Beverly Zaleski, B.A., and reviewed by Dick Smith, L.M.H.C., who determined that Plaintiff suffered from "impairment in social and occupational functioning," and assigned Plaintiff a GAF score of 50. (T 746-48)   However, these general conclusions regarding Plaintiff's overall mental functioning say little as to any specific restrictions in her social functioning.  See Wind v. Barnhart, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005) (per curiam) (recognizing that the Commissioner has declined to endorse the use of GAF scores in disability determinations and that such scores have no "direct correlation to the severity requirements of the mental disorders listings."(citation and internal quotation marks omitted).).  Further, the ALJ was under no legal duty to afford this one-time assessment controlling weight where it was issued by a non-medical source and was otherwise inconsistent with the broader medical record, including Plaintiff's own subjective statements about her social abilities.  See 20 C.F.R. §§ 404.1513(a), 404.1527(a)(2), 416.913(a), 416.927(a)(2).

With regard to her difficulties in maintaining concentration, persistence, or pace, Plaintiff also fails to rebut the ALJ's finding of only moderate limitations.  A review of the medical record shows that Plaintiff's memory, attention, and concentration remained intact when not currently

9

affected by her panic attacks. (T 37, 527 ("She appears capable of following instructions, even somewhat detailed instruction unless she experiences a panic attack.")).  However, as discussed in greater detail <u>infra</u>, the Court finds that the ALJ properly discounted the frequency, duration, and severity of Plaintiff's panic attacks as alleged, thus diminishing the impact of these attacks on Plaintiff's concentration.  Finally, while Plaintiff reiterates her diagnoses of major depressive disorder and panic disorder in support of her argument—which the Court notes were properly acknowledged by the ALJ at step two of his Decision—she fails to sufficiently explain how these diagnoses corresponded to specific functional limitations that rose to a listing level of severity.  <u>See</u> <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon [a claimant's] ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality.").

In the absence of probative evidence documenting marked limitations in both maintaining social functioning and maintaining concentration, persistence, or pace, the Court finds that Plaintiff has failed to meet her burden in demonstrating that she satisfied the criteria of Listing 12.04.[2]  <u>See</u> <u>Zebley</u>, 493 U.S. at 530.  As the ALJ's step three finding was supported by substantial evidence, Plaintiff's argument is without merit and remand is not required.[3]

---

[2]  Plaintiff does not contest the ALJ's finding that she did not satisfy the criteria under Paragraph C of Listing 12.04.

[3]  To the extent Plaintiff contends the ALJ did not properly consider Plaintiff's impairments in combination, such an argument is without merit.  The ALJ concluded at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (T 30)  Similar language has been held sufficient to discharge the Commissioner's obligation to consider impairments in combination. <u>See</u> <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (ALJ properly considered combined effect of impairments in finding that claimant is "not suffering from any impairment, or a combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity").

**B.      The ALJ's Analysis of the Opinion Evidence on Record (Issues 1, 2, 4, 5, and 8)**

Plaintiff next argues that the ALJ failed to properly weigh the various medical opinions in

the record.  Generally, a plaintiff has the burden of providing the medical and other evidence about

her impairments for the ALJ to use in reaching his conclusions.  20 C.F.R. § 416.912(a).  An ALJ

must "consider all evidence in [the claimant's] case record when [making] a determination or

decision whether [the claimant is] disabled."  20 C.F.R. § 416.920(a)(3).  To that end, an ALJ may

not pick and choose which evidence he considers in making the disability determination.  See

McCruter, 791 F.2d at 1548.  In addition, an ALJ is "required to state with particularity the weight

he gave the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278,

279-80 (11th Cir. 1987)(per curiam).  However, "there is no rigid requirement that the ALJ

specifically refer to every piece of evidence in his decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005)(per curiam).  Instead, the ALJ must state "with at least some measure of clarity the

grounds for his decision."  Winschel, 631 F.3d at 1179.

**1.      Lois Corwin, A.R.N.P., and Linda Lefler, M.D.**

In its May 25, 2011 order, the Appeals Council directed the ALJ to reconsider Nurse

Practitioner Corwin's April 3, 2008 Mental Assessment Questionnaire in accordance with SSR 06-

3p. (T 36, 135-37)  SSR 06-03p clarifies the distinction in the Commissioner's treatment of

acceptable medical sources versus other medical sources:

> The distinction between "acceptable medical sources" and other
> health care providers who are not "acceptable medical sources" is
> necessary for three reasons.    First, we need evidence from
> "acceptable medical sources" to establish the existence of a medically
> determinable impairment. See 20 CFR 404.1513(a) and 416.913(a).
> Second, only "acceptable medical sources" can give us medical
> opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only
> "acceptable medical sources" can be considered treating sources, as

> defined in 20 CFR 404.1502 and 416.902, whose medical opinions
> may be entitled to controlling weight. See 20 CFR 404.1527(d) and
> 416.927(d).
> . . .
> Information from these "other sources" cannot establish the existence
> of a medically determinable impairment. Instead, there must be
> evidence from an "acceptable medical source" for this purpose.

See SSR 06-03p, 2006 WL 2329939, at *2-5 (Aug. 9, 2006).  In addition, the Appeals Council

observed that Nurse Practitioner Corwin's opinion referenced an attached note, which was not

included with the exhibit. (T 135)  Therefore, the Appeals Council concluded that the record was

incomplete and ordered the ALJ to recontact Nurse Practitioner Corwin for further development of

the record. (T 135-36)

Nurse Practitioner Corwin completed the relevant mental assessment questionnaire after

seeing Plaintiff on three prior occasions and diagnosed Plaintiff with major depressive disorder with

panic attacks. (T 724)  Nurse Practitioner Corwin identified a number of panic-related symptoms

and assigned Plaintiff a current GAF score of 52. (T 724, 726)  However, she opined that Plaintiff's

prognosis was "good" (T 36, 727) so long as Plaintiff became more compliant with recommended

treatment, which consisted of regular medication management and therapy. (T 727)  The remainder

of the mental assessment questionnaire, which includes a number of sections to describe Plaintiff's

functional limitations in greater detail, referenced an attached "note" that was not included with this

exhibit in the record. (T 724-33)  The final page of Nurse Practitioner Corwin's opinion contains

an additional signature by Linda Lefler, M.D. (T 733)

Pursuant to the Appeals Council's directive, the ALJ considered Nurse Practitioner Corwin's

opinion in accordance with SSR 06-03p and noted that Nurse Practitioner Corwin "would not be

considered an acceptable medical source under the regulations … and in that regard could not

12

establish a basis for a medically determinable impairment or give medical opinions." (T 28) However, the ALJ proceeded to review Dr. Corwin's treatment records and stated that the "limitations described in [Plaintiff's] residual functional capacity … include[d] consideration of those records." (T 28)  Ultimately, the ALJ afforded Nurse Practitioner Corwin's opinion little weight because it was "vague." (T 36)

With regard to the missing note, Plaintiff does not explicitly challenge the ALJ's compliance with the Appeals Council's directive to recontact Nurse Practitioner Corwin and, instead, acknowledges that it "is true there is no attachment in the record to [Nurse Practitioner Corwin's] assessment." (Dkt. No. 18 at 2)  Nevertheless, Plaintiff contends that "clearly what Nurse Corwin and Dr. Lefler were referring to was the initial psychiatric evaluations on January 2, 2008 found at pages 866 and 867." (Dkt. No. 18 at 2)  In her initial psychiatric evaluation of Plaintiff, Nurse Practitioner Corwin reviewed Plaintiff's personal and medical history and performed a mental status examination. (T 866-68)  While Nurse Practitioner Corwin diagnosed Plaintiff with major depressive order with panic attacks, the results of her mental status examination were relatively unremarkable. (T 866-68)  For instance, Nurse Practitioner Corwin found that, in spite of Plaintiff's mental impairments, she was very pleasant and cooperative, appeared well-groomed, was fully oriented, and appeared to be of average intelligence. (T 867-68)  Plaintiff denied hallucinations, delusional thinking, paranoia, and suicidal or homicidal ideation, and Nurse Practitioner Corwin found that Plaintiff's memory and cognition were intact. (T 867-68)  Further, Nurse Practitioner Corwin assigned Plaintiff a current GAF score of 52, which denoted moderate, as opposed to serious, symptoms. (T 868)

Overall, Nurse Practitioner's opinions described an individual who suffered from moderate

symptoms as a result of her major depressive disorder with panic attacks that occurred "sometimes during the day." (T 867)  Nurse Practitioner Corwin expressed an optimistic prognosis in both her initial evaluation and April 3, 2008 assessment. (T 727 (noting that Plaintiff's prognosis was "good"), 867 (noting that Plaintiff appeared "motivated for treatment.")).  Therefore, the ALJ did not err in evaluating her opinions, which he discounted because they were "vague." (T 36)  Nothing in Nurse Practitioner Corwin's April 3, 2008 opinion indicated that Plaintiff suffered from disabling symptoms, and the lack of an accompanying "note" provides sufficient basis for the ALJ to afford her opinion little weight.  Plaintiff claims that "there can be no doubt that [Nurse Practitioner Corwin and Dr. Lefler] found difficulty thinking and concentrating with mood disturbance and emotional ability." (Dkt. No. 18 at 3)  However, Plaintiff fails to explain how these difficulties resulted in functional limitations more severe than those limitations already identified by the ALJ in his Decision.  As discussed supra, the Court finds that the ALJ's assessment of Plaintiff's difficulties in concentration, persistence, or pace and social functioning were based on substantial evidence.  To that end, the ALJ's assessment of Nurse Practitioner Corwin's opinion was based on substantial evidence.

Plaintiff also argues that the ALJ should have treated Nurse Practitioner Corwin's mental assessment questionnaire as the opinion of Dr. Lefler as well, since her signature appears at the end of the report.  (T 733)  However, it is unclear whether Dr. Lefler had any involvement in the findings made in Nurse Practitioner Corwin's mental assessment questionnaire and also whether Plaintiff was actually examined by Dr. Lefler during her treatment at the Suncoast Center for Community Mental Health.  None of Plaintiff's progress notes at the Suncoast Center for Community Mental Health were issued by Dr. Lefler, and while Nurse Practitioner Corwin occasionally attributed Plaintiff's

Klonopin prescription to Dr. Lefler, Plaintiff's medication records were filled out almost entirely by Nurse Practitioner Corwin. (T 699, 733, 736, 737, 770, 773, 854-55) In addition, lab reports produced for the Suncoast Center for Community Mental Health explicitly replaced Dr. Lefler's name with Nurse Practitioner Corwin's name in the "Physician ID" field. (T 738-39, 771-772)

In sum, the medical record reveals that Plaintiff was treated primarily by Nurse Practitioner Corwin at the Suncoast Center for Community Mental Health, and Dr. Lefler played, at most, a limited role in cosigning Nurse Pracitioner Corwin's mental assessment questionnaire.  Without record evidence that Plaintiff was actually treated by Dr. Lefler, the ALJ was not required to conduct a "good cause" analysis of Nurse Practitioner Corwin's opinion or "[take it] as true as a matter of law" as if it were indeed completed by a treating physician, as Plaintiff contends.  (Dkt. No. 18 at 9)

### 2.     Gerald Hodan, Ph.D.

Plaintiff also challenges the ALJ's assessment of the opinions of consultative examiner Gerald Hodan, Ph.D., who completed a July 9, 2007 psychological evaluation. (T 37, 526-28) Plaintiff reported to Dr. Hodan that she experienced panic attacks in her sleep and suffered from depressive symptoms. (T 527) Upon examination, Dr. Hodan found that Plaintiff retained relatively normal cognitive functioning with average intelligence and memory, good appearance and communication skills, and a cooperative attitude. (T 527)  Therefore, Dr. Hodan concluded that Plaintiff "was not found today to present with severe impairments in attention, concentration, or memory needed to understand, remember, and follow-through on instructions given to her in a job setting." (T 527, 37)  In addition, Dr. Hodan noted that Plaintiff appeared "capable of following instructions, even somewhat detailed instruction unless she experiences a panic attack," at which

15

time "her ability to maintain focus, complete a task, and do so in a timely manner will be severely

impaired." (T 527, 37)

In his Decision, the ALJ considered Dr. Hodan's consultative evaluation and afforded it

partial weight as follows:

> Some of Dr. Hodan's opinions are vague, such as his opinions that the
> claimant would be "severely limited" when experiencing a panic
> attack or that she could "draw some negative attention to herself",
> and are given little weight as he failed to explain these in sufficient
> detail. The remainder of his opinions are given great weight as they
> are consistent with his observations and the medical record,
> particularly exhibits 15F, 17F, 20F, 21F, 24F, 25F, and 37F.

(T 37)  After reviewing the medical record as a whole, the Court finds that the ALJ's assessment of

Dr. Hodan's opinion was based on substantial evidence.  Generally, Dr. Hodan's opinion was

consistent with the ALJ's RFC assessment, as it indicated mostly moderate symptomatology.  The

ALJ justifiably discounted the portions of Dr. Hodan's opinion that were somewhat vague, as these

portions were also inconsistent with Dr. Hodan's relatively unremarkable findings.  Finally, to the

extent that the ALJ's assessment of Dr. Hodan's opinion was also based upon his evaluation of

Plaintiff's subjective testimony regarding the frequency and severity of her alleged panic attacks,

the Court finds infra that the ALJ's credibility finding was supported by substantial evidence.

Plaintiff also takes issue with the ALJ's failure to recite in greater detail the contents of Dr.

Hodan's opinion.  However, the ALJ is not bound by such a high standard of rigidity, and Plaintiff

provides no legal support for her argument.  Nor did the ALJ "brush aside" the less favorable

portions of Dr. Hodan's evaluation.  (Dkt. No. 18 at 3)  Instead, the ALJ sufficiently stated with

"some measure of clarity" the reasons for discounting the vague portions of Dr. Hodan's opinion,

namely because they were conclusory and inconsistent with the medical record including Dr.

Hodan's contemporaneous findings.  Winschel, 631 F.3d at 1179.  In sum, the ALJ's assessment of

Dr. Hodan's opinion was based on substantial evidence.

### 3.     Scott M. Wisotsky, M.D., and John Drygas, M.D.

Plaintiff next argues that the ALJ failed to state the weight given to the progress notes from

Drs. Wisotsky and Drygas at the Florida Spine Institute.  In his Decision, the ALJ discussed both

doctors' findings, but did not explicitly state the weight afforded to them.  However, nothing in these

progress notes contradicted the ALJ's RFC assessment limiting Plaintiff to a reduced range of light

work. (T 27, 32-34, 689, 905-07).  Although an ALJ is generally required to state the weight given

to the various medical opinions on record, an ALJ's failure to state the weight afforded to a medical

opinion is harmless where the opinion does not contradict the ALJ's ultimate findings.  See Diorio

v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983); see also Tillman v. Comm'r, 559 F. App'x 975, 975-

76 (11th Cir. 2014) (per curiam) (unpublished) (recognizing harmless error analysis in the context

of an ALJ's failure to address a treating source's opinion).[4]

Here, Plaintiff fails to explain how the progress notes of Drs. Wisotsky and Drygas, even if

given controlling weight, would have changed the ALJ's Decision in this case.  For instance,

Plaintiff notes that Dr. Drygas found that Plaintiff suffered from an unsteady gait that would limit

her ability to ambulate effectively.  (Dkt. No. 18 at 6)  However, the ALJ explicitly discussed Dr.

Drygas's gait finding in his Decision and placed restrictions on Plaintiff's ambulation and balance

in his RFC assessment. (T 27 (noting that Dr. Drygas found Plaintiff's gait to be antalgic and

unsteady), 32 ("she can stand or walk for up to 6 hours per day … she must avoid unprotected

---

[4]  Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered
binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

heights….")).  Contrary to Plaintiff suggestion, neither Dr. Wisotsky nor Dr. Drygas opined that Plaintiff's limitations were more severe than those limitations ultimately adopted by the ALJ.  Thus, any error that the ALJ may have committed by failing to explicitly state the weight given to either opinion is, at worst, harmless.  See Wright v. Barnhart, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (unpublished) ("Although the ALJ did not explicitly state what weight he afforded the opinions of [the plaintiff's physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.").

### 4.    Lance Cassell, M.D., and Evidence of Shoulder / Hand Impairments

Plaintiff also challenges the ALJ's evaluation of Dr. Cassell's consultative opinion as well as the medical evidence documenting alleged impairments in the shoulder and hand.  Plaintiff notes that,  in the previous decision, ALJ Colarusso found that she suffered from the severe impairments of right shoulder impingement syndrome and right hand degenerative arthritis. (T 120)  Therefore, Plaintiff asserts, the ALJ should have found that these impairments had "more than a minimal effect upon the ability to perform work" in the current decision.  (Dkt. No. 18 at 5)  At the outset, the ALJ was not bound by the findings made by ALJ Colarusso.  See Gibbs v. Barnhart, 130 F. App'x 426, 430 (11th Cir. 2005) (per curiam) (unpublished) (holding that the plaintiff's "contention that the second ALJ was legally bound by the first ALJ's findings that [the plaintiff's] ADHD and anemia were 'severe' impairments is without merit").  In its order, the Appeals Council vacated ALJ Colarusso's decision with instructions to obtain and consider additional evidence. (T 135-37)  Therefore, the specific findings contained that decision were never conclusively established and were subject to modification.  Moreover, the current ALJ's review of the evidentiary record as a whole necessarily included a full reconsideration of Plaintiff's severe impairments and was, thus,

18

"not inconsistent with the Appeals Council's remand order." Gibbs, 130 F. App'x at 430 (citing 20 C.F.R. § 416.1477(b)).  Nevertheless, the Court finds that the ALJ's analysis of Plaintiff's severe impairments as well as Dr. Cassell's opinion was based on substantial evidence.

In his exhaustive review of the medical record, the ALJ discussed the objective evidence documenting Plaintiff's shoulder and hand impairments. (T 26 ("Objective imaging by MRI of the claimant's right shoulder dated November 20, 2007, showed a mass consistent with a cyst"), 27 ("Dr. Scott Wisotsky, M.D., … noted on December 6, 2007, that the claimant had a DASH score of 88.63; she was in moderate discomfort; she had pain to palpation over her shoulder; she had reduced range of motion in her shoulder…."), 27 ("X-rays of the claimant's right hand dated August 6, 2009 showed degenerative changes involving the interphalangeal joints"), 615, 689-92, 766, 939, 940 ).  In spite of this evidence, the ALJ did not identify any severe impairments of the shoulder or hand at step two of his Decision. (T 26)  Nevertheless, the ALJ was not required to identify all of the impairments that could be considered severe at step two of his Decision.  See Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) (unpublished) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").  The Eleventh Circuit has noted that step two is a threshold inquiry, and in the remaining steps, the ALJ is required to demonstrate that he has considered all of the claimant's impairments, whether severe or not, in combination. Id. (citing Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir.1984) (explaining that the ALJ must make "specific and well-articulated findings as to the effect of the combination of impairments").).  In this case, the Court finds that the ALJ satisfied this duty in the subsequent steps of his Decision.

In terms of Plaintiff's right shoulder impingement syndrome, the ALJ correctly noted that

there was little evidence to support that this impairment lasted twelve or more months. (T 29)

Plaintiff fails to identify any evidence after 2007 documenting the continuation of her right shoulder

impingement syndrome, she claims that this impairment "would not go away, but if anything, would

become worse." (Dkt. No. 18 at 5)  Plaintiff argues that the "ALJ in this case is offering his opinion

that such conditions miraculously could get better without the benefit of additional objective

evidence."  (Dkt. No. 18 at 5)  However, Plaintiff confuses the ALJ's duty to review the evidence

with her own duty to furnish such evidence in support of her case.  See Ellison v. Barnhart, 355 F.3d

1272, 1276 (11th Cir. 2003) (per curiam) (noting that "the claimant bears the burden of proving that

[she] is disabled, and consequently, [she] is responsible for producing evidence in support of [her]

claim.").

Examination evidence of Plaintiff's shoulder impairment comes from Dr. Cassell's one-time

consultative examination, in which he observed decreased range of motion in the bilateral

shoulders.[5] (T 34, 889, 898) However, the ALJ properly discounted Dr. Cassell's consultative report

as unsupported by his own contemporaneous notes as well as the broader medical record. (T 35)

Specifically, the ALJ stated:

> Dr. Cassell's opinions are not consistent with his observations or the
> medical record. For instance, Dr. Cassell noted that the claimant had
> a normal gait and full strength at 5/5, yet he opined that the claimant
> had severe limitations in standing and walking. As detailed above, the
> medical record indicates the claimant was mostly normal on
> examination, she was active, and she had mostly intact activities of
> daily living. Further, Pinellas Health treatment records noted that the
> claimant was physically active and she reported that she rides a

---

[5]  The evidence on record also describes an improvement in Plaintiff's shoulder
impairment due to a modest treatment regimen. (T 689-92)  On December 12, 2007, Dr.
Wisotsky administered a cortisone injection, after which Plaintiff "had complete relief of her
pain," and experienced significant increases in strength and range of motion. (T 689)

bicycle and walks 2 to 2.5 miles per day, which is certainly inconsistent with Dr. Cassell's opinions (Exhibits 22F, 36F, 38F and 46F). In that regard, Dr. Cassell's opinions are given little weight.

(T 35)  Plaintiff speculates that the ALJ discounted Dr. Cassell's opinion in order to avoid issuing a disability finding, yet fails to demonstrate that the ALJ's reasoned analysis of Dr. Cassell's consultative opinion is not supported by substantial evidence.[6]

With regard to Plaintiff's alleged hand impairments, Plaintiff also fails to counter the ALJ's well-supported assessment of Plaintiff's functional abilities.  In spite of evidence of degenerative changes in Plaintiff's hands, examination notes from Drs. Wisotsky and Cassell revealed functionality that was consistent with the ALJ's RFC assessment. (T 27, 34, 691 (noting full grip strength), 890 ("Hand and finger dexterity is mildly reduced bilaterally, worse on the right than the left.  Grip strength 5-/5 bilaterally.  She is able to tie a knot without any problems.")).  Thus, the ALJ properly evaluated Plaintiff's shoulder and hand impairments, as the medical record does not support Plaintiff's claim that these impairments "resulted in a lack of bilateral manual dexterity and being relegated to a sedentary level of exertion…."  (Dkt. No. 18 at 6)

### 5.    The Plaintiff's GAF Scores

Plaintiff also claims that the ALJ improperly weighed the various GAF scores of 50 or below that allegedly indicated serious symptoms of mental impairment.  In his Decision, the ALJ thoroughly discussed the various GAF scores issued by Plaintiff's treating and non-treating sources throughout the relevant period, including the GAF scores issued by Drs. Hodan and Appenfeldt mentioned by Plaintiff in her brief.  The ALJ found that Plaintiff's GAF scores generally

---

[6] Even prior to Dr. Wisotsky's treatment for shoulder impingement, Plaintiff did not report any shoulder-related issues in her June 2007 function report, which instead focused primarily on Plaintiff's depression and anxiety. (T 318-25)

corroborated the ALJ's ultimate finding of moderate symptoms of mental impairment.  Specifically, the ALJ noted:

> The medical record indicates the claimant has been assigned global assessment of functioning (GAF) scores of 45, indicating serious symptoms or any serious impairment in social, occupational, or school functioning; to 56, indicating moderate symptoms or moderate difficulty in social, occupational, or school functioning. The reader is reminded that the Commissioner has specifically declined to endorse the GAF scale for use in disability programs, and has stated that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50, 746-50, 764-65 (August 21, 2000). Additionally, GAF scores are a subjective measurement of a particular point in time and they do not correlate to a work related limitation. However, the claimant's GAF scores are fairly consistent with findings that the claimant has a moderate restriction in social functioning, and a moderate restriction in concentration, persistence, or pace. In that regard, the claimant's GAF scores are given some weight.

(T 37)

Plaintiff argues that the GAF scores provided by Drs. Hodan and Appenfeldt were "indicative of an inability to sustain work," and the ALJ "may not simply ignore GAF scores when they indicate serious symptoms." (Dkt. No. 18 at 14)  However, the ALJ did not ignore these GAF scores.  To the contrary, the ALJ considered these GAF scores in the context of the broader medical record in order to more completely evaluate the overall functional impact of Plaintiff's mental impairments.  As Plaintiff later acknowledges in her brief, a particular GAF score is merely "a snapshot in time as to how well a person was doing at that time."  (Dkt. No. 18 at 13)  While Plaintiff may disagree with the ALJ's assessment of the evidentiary value of the GAF scores issued by Drs. Hodan and Appenfeldt, she has failed to demonstrate that the ALJ's evaluation of GAF scores was flawed or would result in the imposition of a more restrictive RFC assessment in this

case.  This issue does not entitle Plaintiff to relief.

**C.      The ALJ's Credibility Analysis (Issues 7 and 9)**

Plaintiff next argues that the ALJ failed to properly evaluate her credibility in assessing her subjective symptoms including pain.  In the Eleventh Circuit, the pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The standard also applies to complaints of subjective conditions other than pain." Id.  In applying the Eleventh Circuit's three-part pain standard, it is within the ALJ's discretion to determine that a plaintiff's claims of pain and other symptoms are not credible.  See Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence.").  "But the ALJ's discretionary power to determine the credibility of testimony is limited by [her] obligation to place on the record explicit and adequate reasons for rejecting that testimony." Holt, 921 F.2d at, 1223. See also Marbury, 957 F.2d at 839 ("If the ALJ refused to credit subjective pain testimony where such testimony is critical, he must articulate specific reasons for questioning the claimant's credibility.").

In his Decision, the ALJ evaluated Plaintiff's subjective symptoms, but ultimately found them not credible to the extent that they were inconsistent with his RFC assessment.  In support of this finding, the ALJ noted the disparity between Plaintiff's allegations of total disability and the documentary evidence on record.  For instance, the ALJ explained:

> [T]he claimant testified that she could only walk half a block. However, the claimant admitted at one point that she went for short

23

> walks (Exhibit 6E). Additionally, Pinellas Health treatment records
> noted on June 10, 2010, that the claimant was physically active; and
> on July 28, 2010, that she reported that she rides a bicycle and walks
> 2 to 2.5 miles per day (Exhibits 22F, 36F, 38F and 46F). These
> inconsistent statements reduce the claimant's credibility.
> …
> In fact, the medical record indicates the claimant was mostly
> normal on examination, she was active, and she had mostly intact
> activities of daily living.

(T 33-34)

The ALJ's credibility finding was based on substantial evidence.  As the ALJ correctly noted in his Decision, Plaintiff's claims of extreme functional restrictions were often contradicted by examination findings that revealed relatively normal functionality. (T 33-35)  For example, in her June 3, 2007 function report, Plaintiff stated that she was able to walk for only two and a half blocks before having to stop and rest for twenty to thirty minutes.  Plaintiff also testified that she could only walk half a block. (T 60, 310)  However, Plaintiff's examinations revealed few gait or ambulation impairments.  For example, Pinellas Health records noted Plaintiff was physically active, feeling great, and had normal gait. (T 34, 831-32, 834) Dr. Cassell similarly noted Plaintiff had normal gait and stance, was able to rise from a chair without difficulty, and did not need help getting on and off the exam table or changing for the exam. (T 34, 888)  Additionally, Claimant admitted in a function report that she went for short walks. (T 33, 321)  She also reported that she rode her bike and walked two (2) to two and one half (2.5) miles at a time. (T 33, 828)

With regard to her mental impairments, Plaintiff described extreme functional restrictions due to panic and anxiety attacks, which she claims occurred everyday, lasted between two minutes and two weeks, and rendered her completely unable to work. (T 33, 344-45)  However, the medical record contradicts the frequency, duration, and severity of these attacks as alleged by Plaintiff.  For

instance, in a December 17, 2008 progress note, Nurse Practitioner Corwin stated that Plaintiff

denied any frequent panic attacks, but rather suffered from a "fair degree of anxiety at times." (T

740)  Progress notes from the Suncoast Center for Community Mental Health also documented the

relative success of Plaintiff's prescription medications in improving her mental symptoms. (T 36,

740 (noting that Plaintiff was "doing well" on her medications), 852 ("She has been doing very well,

has developed some positive coping skills. No side effects to her medication reported."), 853 ("She

is doing very well on the medication.  She is having no side effects."), 867 ("The Xanax has helped

considerably in managing these panic attacks.")).  Finally, as discussed by the Court supra, the

objective evidence demonstrates that Plaintiff's mental functionality remained only moderately

restricted in spite of her allegedly disabling impairments. (T 30-31, 527-28, 773, 775, 828, 843, 856,

863, 864, 867, 911, 912, 919, 923, 925, 935, 944)

In conclusion, the ALJ cited substantial evidence to support his determination that Plaintiff's

statements concerning the intensity, persistence, and limiting effects of her alleged symptoms were

not credible to the extent they were inconsistent with a RFC for light work with the limitations

described by the ALJ. (T 32-33, 35, 37-38)[7]

Plaintiff also challenges the ALJ's assessment of the lay testimony from Plaintiff's friends.

In his Decision, the ALJ explained his reasons for discounting these non-medical opinions:

> As appropriate under SSR 06-3p and the Regulations (20 CFR
> 404.1513(e)(2) and 416.913(e)(2)), the undersigned has reviewed all
> third party statements and observations, and in particular those made
> by Michael Anthony Jones and Timothy Jones, the claimant's friends
> (Exhibits 3E, 5E, 15E). In considering evidence from "non-medical
> sources" who have not seen the individual in a professional capacity

---

[7] Contrary to Plaintiff's assertion (Dkt. 18 at 12), the ALJ properly cited and applied the
Eleventh Circuit pain standard. (T 32-38)

> in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence. Notably, the statements for the most part merely corroborate the testimony of the claimant regarding the severity and nature of her symptoms. As explained above, there exists good reasons for questioning the reliability of the claimant's subjective complaints. In that regard, the third party statements are given little weight.

(T 38)  Plaintiff describes the ALJ's analysis as "truly ridiculous" and instead asks the Court to treat these third-party opinions "in the same way as the medical evidence."  (Dkt. No. 18 at 14-15)  However, Plaintiff fails to provide any relevant legal or factual support for her argument.  In this case, after discounting Plaintiff's subjective complaints of pain and other symptoms, the ALJ properly discounted the testimony of Plaintiff's friends, as they were made by non-medical sources and merely corroborated the testimony of Plaintiff.   As the ALJ's credibility finding and RFC assessment were based on substantial evidence,  the ALJ's refusal to adopt the lay testimony in this case was also based on substantial evidence.  See McCloud v. Barnhart, 166 F. App'x 410, 417 (11th Cir. 2006) (per curiam) ("When the medical evidence supports the ALJ's determination, the ALJ does not err by refusing to admit lay testimony.").  Thus, Plaintiff's argument is without merit.

**D.      The ALJ's Hypothetical Question to the VE (Issue 6)**

Finally, Plaintiff argues that the ALJ issued an incomplete hypothetical question to the VE at the Hearing.  Specifically, Plaintiff contends:

> [T]here is an immediate inconsistency which is evidenced on the face of the record in that in the RFC the ALJ determined that with regard to concentration [Plaintiff] would be able to concentrate for two (2) hours, take a ten minute break, then be able to concentrate for another two (2) hours and then, one would assume, would have another ten minute break all day long. However, at pages 31 and 37, the ALJ clearly determines the concentration impairment that [Plaintiff] has

is moderate. This would mean that her ability to concentrate would be in the middle of the spectrum, thus, she would be able to only concentrate from one-third (1/3) to two-thirds (2/3) of the day. Clearly a moderate impairment is not the same as one where an individual is able to concentrate all day long except for several ten minute breaks throughout the day.

Therefore, based upon such inconsistency, the [hypothetical question] used as a basis for decision is inconsistent with the other findings of the ALJ. As a result there is not substantial evidence to support the decision of the ALJ and clearly this case must then be remanded and reversed.

(Dkt. No. 18 at 11-12)  The Court is not persuaded by Plaintiff's argument, which lacks both legal and factual support.  To the contrary, and as discussed in greater detail supra, the medical evidence demonstrated that Plaintiff retained relatively normal mental functionality in spite of her moderate limitation in maintaining concentration, persistence, or pace. (T 30-31, 37, 527 ("[Plaintiff] appears capable of following instructions, even somewhat detailed instruction unless she experiences a panic attack."); 909-12, 923-28, 942-44 (Plaintiff's cognitive functioning was grossly intact)).  Further, Plaintiff's argument ignores the other mental limitations included in the ALJ's RFC assessment and hypothetical question to the VE that accommodated Plaintiff's moderate limitation in maintaining concentration, persistence, or pace.  For instance, in addition to the limitation that Plaintiff would need a ten-minute break after two hours of concentration, the ALJ also asked the VE to consider inter alia that Plaintiff would be limited to simple, routine, repetitive tasks and should not perform rapid production or rapid quota type work. (T 32, 77)

Overall, the Court finds that the ALJ's RFC assessment sufficiently incorporated all of Plaintiff's limitations, including her moderate limitation in maintaining concentration, persistence, or pace.  Plaintiff fails to support the argument that imposition of a more restrictive hypothetical question in this case was required, and the Court finds that her argument is without merit.  See

Beegle v. Social Security Administration, Commissioner, 482 F. App'x 483, 487 (11th Cir. 2012) ("An ALJ is not required to include findings in a hypothetical question that the ALJ properly rejected as unsupported.").

## V.   Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles.  The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)   The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: June 30, 2015**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:

District Judge

Counsel of Record